No. 19-01246

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

ORIGINAL
WITH PROOF OF
SERVICE

**DANIEL E. CARPENTER,**
Petitioner-Appellant,

v.

**UNITED STATES,**
Respondent-Appellee.

## PETITION FOR REHEARING *EN BANC*

Daniel E. Carpenter
*Pro Se*
FMC Devens
P.O. Box 879
Ayer, MA 01432

1

# TABLE OF CONTENTS

RULE 35 STATEMENT ......................................................................3

I.  The Constitutionally Defective Indictments Failed to Invoke the Jurisdiction of the District Court...................................................................6

II.  The Due Process Delays and Speedy Trial Delays in this Case are Extraordinary ......................................................................9

III.  The Knowing Use of Perjured Testimony by the Government Requires Vacating Petitioner's Conviction..........................................................10

IV.  Judge Kayatta's "Nutshell" Description Proves there was no Crime here and the Indictment was Constructively Amended.........................................13

V.  The Rule of Lenity Mandates Vacating Petitioner's Conviction ......................15

CONCLUSION ......................................................................17

## CASES

*Arthur Andersen v. United States*, 544 U.S. 696, 703 (2005) ...................................16

*Banks v. Dretke*, 540 U.S. 668 (2004) .....................................................................12

*Barker v. Wingo*, 407 U.S. 514 (1972) ................................................................. 9, 11

*Betterman v. Montana*, 136 S.Ct. 1609 (2016)................................................. 5, 9, 11

*Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ...................................17

*Coggins v. O'Brien*, 188 F.2d 130, 138 ............................................................. 11, 12

*Doggett v. United States*, 505 U.S. 647 (1992)............................................. 5, 10, 11

*Drumgold v. Callahan*, 707 F.3d 28 (1st Cir. 2013)........................................ 11, 12

*Durland v. United States*, 161 U.S. 306 (1896)................................................. 5, 11

*Elonis v. United States*, 135 S.Ct. 2001 (2015) ............................................... 5, 11

*Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972)................................................ 5, 11

*Kann v. United States*, 323 U.S. 88, 95 (1944)........................................................14

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) .....................................................12

*Marinello v. United States*, 138 S.Ct. 1101 (2018) ................................... 4, 6, 7, 11

*McEvoy Travel v. Heritage Travel*, 904 F.2d 786 (1st Cir. 1990)............ 5, 7, 11, 14

*Miller v. Pate*, 386 U.S. 1 (1967).............................................................................12

*Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) ............................... 6, 11

*Moore v. Arizona*, 414 U.S. 25 (1973)............................................................. 5, 9, 11

*Morissette v. United States*, 342 U.S. 246 (1952)........................................... 5, 7, 11

*Ouimette v. Moran*, 942 F.2d 1 (1st Cir. 1991) ............................................. 5, 10, 11

*Rosales-Mireles v. United States,* 138 S.Ct. 1897 (2018) .............................. 4, 6, 11

*Sanchez v. Triple-S*, 492 F.3d 1 (1st Cir. 2007)....................................... 5, 7, 11, 14

*Skilling v. United States*, 561 U.S. 358 (2010) ....................................... 5, 11, 13, 14

*United States* v. *Autuori,* 212 F.3d 105, 118 (2d Cir. 2000).............................. 7, 11

*United States v. Berroa*, 856 F.3d 141, 150 (1st Cir. 2017) ...................................14

*United States v. Black*, 918 F.3d 243 (2d Cir. 2019) ......................................... 9, 11

*United States v. Carpenter*, 736 F.3d 619, 631 (1st Cir. 2013) ...................... 10, 11

*United States v. Carpenter*, 781 F.3d 599, 610 (1st Cir. 2015)...................... passim

*United States v. Cleveland*, 531 U.S. 12 (2000) .......................................................13

*United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005)...............................16

*United States v. Countrywide,* 822 F.3d 650 (2d Cir. 2016) .......................... passim

*United States v. Emmons*, 410 U.S. 396, 411 (1973)................................................15

*United States v. Handa,* 892 F.3d 95 (1st Cir. 2018)................................... 8, 9, 11

*United States v. Harriss*, 347 U.S. 612, 617 (1954) ...............................................16

*United States v. Hussein*, 351 F.3d 9, 13 (1st Cir. 2003)........................................15

*United States v. Irizarry-Colon,* 848 F.3d 61 (1st Cir. 2017)...................... 8, 9, 11

*United States v. Lanier*, 520 U.S. 259, 266 (1997)..................................................16

*United States v. Loud Hawk*, 474 U.S. 302 (1986)......................................5, 10, 11

*United States v. Marion*, 404 U.S. 307 (1971) .............................................5, 9, 11

*United States v. Maze,* 414 U.S. 395 (1974)............................................................14

*United States v. Morgan*, 346 U.S. 502 (1954)......................................................8, 11

*United States v. Peter*, 310 F.3d 709 (11th Cir. 2002) ...............................8, 11, 13

*United States v. Reina–Del Rosario*, 281 F.Supp.3d 253 (D.P.R. 2017) ........... 9, 11

*United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003)..............................5, 8, 11

*United States v. Saade*, 652 F.2d 1126 (1st Cir. 1981)..................................5, 8, 11

*United States v. Santos*, 128 S.Ct. 2020, 2025 (2008)............................................15

*United States v. Takhalov,* 827 F.3d 1307 (11th Cir. 2016) ...................................13

*United States v. Tavares*, 844 F.3d 46, 59 (1st Cir. 2016)......................................14

*United States v. Urciuoli*, 513 F.3d 290, 293 (1st Cir. 2008)..................................15

*United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016) ........................................13

*United States v. Yefsky*, 994 F.2d 885 (1st Cir. 1993) .............................................16

*Woodcock v. Donnelly*, 470 F.2d 93 (1st Cir. 1972)...........................................5, 11

**STATUTES**

2255 ..................................................................................................................... 6, 11

**RULES**

Rule 12(b)(3)(B) ..................................................................................................... 5, 11

## RULE 35 STATEMENT

Petitioner Daniel E. Carpenter seeks *en banc* review because the Panel opinion deviated from well-established principles of American jurisprudence by ignoring recent Supreme Court cases such as *Marinello v. United States*, 138 S.Ct. 1101 (2018), *Rosales-Mireles v. United States,* 138 S.Ct. 1897 (2018), and *Betterman v. Montana*, 136 S.Ct. 1609 (2016), as well as landmark decisions such as *Elonis v. United States*, 135 S.Ct. 2001 (2015), *Skilling v. United States*, 561 U.S. 358 (2010), *United States v. Marion*, 404 U.S. 307 (1971), *Moore v. Arizona*, 414 U.S. 25 (1973), *United States v. Loud Hawk*, 474 U.S. 302 (1986), *Doggett v. United States*, 505 U.S. 647 (1992), *Durland v. United States*, 161 U.S. 306 (1896), and *Morissette v. United States*, 342 U.S. 246 (1952). Additionally, the Panel's decision erred by further ignoring this Court's own decisions in *Ouimette v. Moran*, 942 F.2d 1 (1st Cir. 1991), *McEvoy Travel v. Heritage Travel*, 904 F.2d 786 (1st Cir. 1990), *Sanchez v. Triple-S*, 492 F.3d 1 (1st Cir. 2007), *Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972), *Woodcock v. Donnelly*, 470 F.2d 93 (1st Cir. 1972), and the famous jurisdictional cases of *United States v. Saade*, 652 F.2d 1126 (1st Cir. 1981) and *United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003).

I.     **The Constitutionally Defective Indictments Failed to Invoke the Jurisdiction of the District Court**

Since both of Petitioner's indictments must be considered under the old Rule 12(b)(3)(B) prior to the change in December 2014, Petitioner has the right to challenge the jurisdiction of the federal court at any time while his case is pending. This Court will be hearing oral argument in Petitioner's case on October 7, 2019, therefore, it was clear error for the Panel to deny Petitioner's Certificate of Appealability petition challenging the jurisdiction of the district court while his case is clearly still pending for the purposes of Rule 12(b)(3)(B). It is not Petitioner's fault that the district court failed to hold an evidentiary hearing and sat on Petitioner's 2255 for four years without ruling, and it should not be held against him that this case is 20 years old. Petitioner's challenge to jurisdiction is still timely and meritorious despite the Panel's findings to the contrary.

The indictments in this case were both constitutionally defective as they failed to state the elements or the facts sufficient to establish any federal crime, and therefore they both failed to invoke the jurisdiction of the federal court. This is plain error under the standards set by the Supreme Court in its decision in *Rosales-Mireles v. United States,* 138 S.Ct. 1897 (2018) *citing Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) and the clear description of fundamental rules of American Jurisprudence as eloquently explained by Chief Justice Roberts in *Marinello v. United States*, 138 S.Ct. 1101 (2018). In *Marinello,* the Supreme Court cited to

several famous cases requiring a defendant to not only know what conduct he is doing that crosses the line into a crime or conduct proscribed by law, he must also know what punishment he will face for breaking the law should he willfully pass that line:

> "We wrote that we have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that *a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. McBoyle v. United States*, 283 U.S. 25, 27 (1931)." *Marinello* at 1106 (emphasis added).

As the Supreme Court teaches us in *Morissette v. United States*, 342 U.S. 246 (1952), for there to be a crime, an evil act must be concurrent with an evil mind. "Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand," quoting Justice Holmes' famous observation that "[e]ven a dog distinguishes between being stumbled over and being kicked." *Id.* at 251-52. The Second Circuit's decision in *United States v. Countrywide,* 822 F.3d 650 (2d Cir. 2016) is based primarily on two famous decisions of this Court: *McEvoy Travel v. Heritage Travel,* 904 F.2d 786, 791-92 (1st Cir. 1990) ("the common law requires proof--other than the fact of breach-that, at the time a contractual promise was made, the promisor had no intent ever to perform the obligation.") *Countrywide* at 660, and *Sanchez* v. *Triple-S,* 492 F.3d 1, 11 (1st Cir. 2007), stating:

**A defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes**. *See United States* v. *Autuori*, 212 F.3d 105, 118 (2d Cir. 2000). We nevertheless observed that "[i]t would be a truly revolutionary change to make a criminal out of every salesman (assuming the use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who-a jury might find-secretly harbored in his heart the hope that the buyer would never ask." *Id.* (emphasis added).

The Second Circuit further emphasized *that regardless of how serious, intentional, or malicious the breach, it is not fraudulent, absent that intention not to perform on the promise when it was made. Id.* at 661 (emphasis added). There was no mail and wire fraud in *Countrywide*, so clearly there was no fraud in BPETCO 20 years ago.  Finally, it is black-letter law that a defective indictment does not invoke the jurisdiction of the federal courts and any decision by a district court that lacks jurisdiction is a nullity and is void as a matter of law.  As this Court stated in *United States v. Rosa-Ortiz*, 348 F.3d 33, 36 (1st Cir. 2003): "a federal court has jurisdiction to try criminal cases only when the information or indictment alleges a violation of a valid federal law. *United States v. Saade*, 652 F.2d 1126, 1134 (1st Cir. 1981)." A federal court similarly lacks jurisdiction to enter a judgment of conviction when the indictment charges no offense under federal law whatsoever. *See United States v. Peter*, 310 F.3d 709 (11th Cir. 2002), *citing United States v. Morgan*, 346 U.S. 502 (1954):

> "When a court without jurisdiction convicts and sentences a defendant, the conviction and sentence are void from their inception and remain void long after a defendant has fully suffered their direct force." *Peter* at 715.

II.    **The Due Process Delays and Speedy Trial Delays in this Case are Extraordinary**

The Due Process delay in this case exceeds that of *United States v. Handa,* 892 F.3d 95 (1st Cir. 2018) and *United States v. Irizarry-Colon,* 848 F.3d 61 (1st Cir. 2017) combined, so that Petitioner's conviction and indictment should be vacated. Moreover, the *Barker v. Wingo*, 407 U.S. 514 (1972) factors that Justice Sotomayor stated in *Betterman v. Montana*, 136 S.Ct. 1609 (2016) and the seven year delay between Petitioner's second trial in June 2008 and this Court's decision in May 2015 ignoring fundamental legal principles of not only this Circuit but the Supreme Court as well, mandate that Petitioner's indictment and conviction be vacated. In addition to the constitutional Speedy Trial and Due Process delays as explained in *Betterman*, by this Court in *Irizarry-Colon* and *Handa*, and by the judge in *United States v. Reina–Del Rosario*, 281 F.Supp.3d 253 (D.P.R. 2017), the constructive amendment of Petitioner's Indictment is a classic Due Process violation that requires it to be dismissed with prejudice.

Similarly, the Second Circuit's recent decision in *United States v. Black*, 918 F.3d 243 (2d Cir. 2019) adopts the law of this Circuit in stating that the clock for the Speedy Trial Clause starts with the initial arrest or indictment. *Black at 279, citing Handa* at 106-07. Ironically the two seminal cases for Speedy Trial delay and Due Process delay in this Circuit both cite Petitioner's case. *See Handa* at 101, *citing United States v. Carpenter*, 781 F.3d 599, 610 (1st Cir. 2015)("[d]elay of around one

9

year is considered presumptively prejudicial, and the presumption that delay prejudices the defendant intensifies over time."), and *Irizarry-Colon* at 68 (same). Thus, the extraordinary delay in Petitioner's case is far longer than any delay in the Supreme Court cases of *United States v. Marion*, 404 U.S. 307 (1971), *Moore v. Arizona*, 414 U.S. 25 (1973), *United States v. Loud Hawk*, 474 U.S. 302 (1986), and *Doggett v. United States*, 505 U.S. 647 (1992).

### III.    The Knowing Use of Perjured Testimony by the Government Requires Vacating Petitioner's Conviction

In the tandem civil case decided by the Massachusetts Court in 2016, Judge Roach made it clear that not only did Merrill Broker Gerry Levine lie, but all of the broker-witnesses and other Merrill Lynch executives perjured themselves as well. Until Judge Roach's opinion, Petitioner had no idea that he and BPETCO had passed two SEC investigations or that Merrill Lynch executives lied in those investigations and at Petitioner's trial.  But, in overturning Judge O'Toole's Second New Trial Order, this Court stated:

> Carpenter consequently was able to and did cross-examine the lying witness "vigorously." The district court therefore determined that a mistrial was not warranted on this basis. On appeal, Carpenter has not identified any reasonable likelihood that the jury's verdict in this case was impacted by the false testimony in light of his vigorous cross-examination. That ends this attack. *United States v. Carpenter*, 736 F.3d 619, 631 (1st Cir. 2013).

A vigorous cross-examination does not cure the Due Process violations under *Brady-Giglio-Bagley* and *Napue*, nor does it relieve the government of its

obligations under those decisions. *See Ouimette v. Moran*, 942 F.2d 1 (1st Cir. 1991),

where this Court vacated the defendant's conviction merely because the government

withheld evidence of his partner's criminal background. Ouimette's partner was far

more credible than Levine, but the government here did nothing, and the district

court stated that Levine lied and "*the government knew it*." This Court wrote in

*Ouimette*:

> Of special pertinence here, the Court in *Agurs* applied a "strict standard of
> materiality" to cases which involve "prosecutorial misconduct" and "a
> corruption of the truth-seeking function of the trial process." *Agurs* at 104. In
> so doing, the Court cited a series of cases beginning with *Mooney,* in which
> "the prosecution's case include[d] perjured testimony and ... the prosecution
> knew, or should have known, of the perjury." *Id.* at 103. These cases, which
> include *Napue*, and *Giglio*, all hold, following this strict standard of
> materiality, that a conviction obtained by the knowing use of perjured
> testimony is fundamentally unfair, and must be set aside if there is *any*
> *reasonable likelihood* that the false testimony *could have affected* the
> judgment of the jury. *Id.* at 11.

This Court has long held that it will not allow the use of perjured testimony

or knowingly-false evidence to be used by the government to convict someone. *See*

*Drumgold v. Callahan*, 707 F.3d 28 (1st Cir. 2013):

> ("[D]ue process ... cannot be deemed to be satisfied ... if a state has contrived
> a conviction through the pretense of a trial which in truth is but used as a
> means of depriving a defendant of liberty through a deliberate deception of
> court and jury by the presentation of testimony known to be
> perjured."); *Napue* at 269 (recognizing "[t]he principle that a State may not
> knowingly use false evidence, including false testimony, to obtain a tainted
> conviction"). *Drumgold* at 61.

It is also the established law of the United States that a conviction obtained through testimony the prosecutor knows to be false is repugnant to the Constitution. *See Mooney v. Holohan*, 55 S.Ct. 340 (1935). As the Supreme Court stated in its unanimous decision in *Giglio v. United States,* 405 U.S. 150, 153 (1972): "It has long been established that the prosecutor's deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *See, also, Banks v. Dretke*, 540 U.S. 6 (2004): "A conviction based on testimony known by the prosecutor to be perjurious is a denial of due process.", and *Napue* at 269 ("a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the [Fifth] Amendment."). "The same result obtains when the State allows it to go uncorrected when it appears." *Id*. Such convictions must be set aside where "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs* at 103 (1976).

In *Drumgold*, above, this Court described *Mooney*'s core premise as "well-settle in citing to *Coggins v. O'Brien*, 188 F.2d 130, 138 (1st Cir. 1951) and the Supreme Court's unanimous decision in *Napue* that was also cited in its unanimous decision in *Giglio*. This Court then cited *Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004), *citing Miller v. Pate*, 386 U.S. 1 (1967): "In 1967, the very year the crimes took place, Justice Stewart, writing for a unanimous court stated 'More than 30 years

ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. There has been no deviation from that established principle." *Miller* at 7.  Once again, this is Plain Error by the Panel under the standard set forth in *Rosales-Mirales*.

## IV.    Judge Kayatta's "Nutshell" Description Proves there was no Crime here and the Indictment was Constructively Amended

Jt as the decision in *United States v. Cleveland*, 531 U.S. 12 (2000) rendered the defendant's judgment in *Peter* a legal nullity, so too did the decision in *Skilling v. United States*, 561 U.S. 358 (2010) render Petitioner's indictment defective in 2010 when the Supreme Court stated that a "scheme of nondisclosure is outside the bounds of the fraustatutes." *Skilling* at 410.  By the time Petitioner was back in front of this Court in 2015, no one was discussing that Petitioner lied to anyone about anything; instead, the government had to constructively amend the indictment one more time to discuss what Petitioner "failed to disclose" to the investors. Similarly, Judge Kayatta's description of this case in a nutshell does not square with the famous Mail and Wire Fraud cases of *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016), *United States v. Takhalov,* 827 F.3d 1307 (11th Cir. 2016), or *United States v. Countrywide,* 822 F.3d 650 (2d Cir. 2016):

> In a nutshell, [Carpenter] **told clients** he would **hold their money** in **escrow accounts** for which the client would pay a fixed fee and which would **cautiously** generate returns of either three or six percent; then (**unbeknownst to his clients**) he invested the money in high-risk, high-return stock options, hoping to generate excess returns to keep for himself. His option trading fared

13

poorly, and he lost nine million dollars in client funds. At trial, he argued unsuccessfully that he never promised that the client funds would be safe, and that he did not intend to defraud his clients when **he failed to disclose** his real strategy of using their money to make risky investments to see if he could hit a home run for himself. *United States v. Carpenter*, 781 F.3d 599, 603 (1st Cir. 2015) (emphasis added).

Suffice it to say, that does not describe mail or wire fraud anywhere in the country after the Supreme Court's decision in *Skilling* and the Second Circuit's decision in *Countrywide citing McEvoy* and *Triple-S*. Furthermore, there was no search for criminal *mens rea* in this case that this Court required in *United States v. Berroa*, 856 F. 141, 150 (1st Cir. 2017) ("under the government's theory, any false statement…could constitute a federal crime.") and *United States v. Tavares*, 844 F.3d 46, 59 (1st Cir. 2016):

> Even assuming that there was a "scheme to defraud," the government did not present substantial evidence of a mailing "in furtherance of" such a scheme. The government points to form rejection letters that OCP staff mailed to unsuccessful applicants, typically after the final candidates were selected, to satisfy the mailing requirement. The defendants contend that all letters were nevertheless mailed after the scheme reached its fruition. Regardless of the exact timing of the mailings, there is no evidence that the letters were material to the consummation of the defendants' scheme. "It was immaterial to [the defendants], or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank." *Id., citing Kann v. United States,* 323 U.S. 88, 95 (1944) and *United States v. Maze,* 414 U.S. 395 (1974).

### V.    The Rule of Lenity Mandates Vacating Petitioner's Conviction

The Rule of Lenity dictates that criminal liability not be imposed for otherwise legal acts done in the ordinary course of business. As this Court stated, "[t]he federal mail fraud statute is built upon a single, archaic 204-word sentence which has undergone repeated periods of rapid expansion and contraction." *United States v. Urciuoli*, 513 F.3d 290, 293 (1st Cir. 2008). During the period referenced in the Indictment, there was no possible way Petitioner could have known in 2007-2009 (or at any time for that matter) at the government five years after-the-fact would seek to brand him a criminal for doing something that no statute, any construction thereof, nor any case had ever before held was unlawful or improper in any way. *See United States v. Emmons*, 410 U.S. 396, 411 (1973) ("this being a criminal statute, it must be strictly construed, and any ambiguity must be resolved in favor of lenity."); *United States v. Santos*, 128 S.Ct. 2020, 2025 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.").

Applying the mail and wire fraud statutes to the facts of this case violates the Rule of Lenity as well as the Due Process Clause because the government at no time provided fair warning to Petitioner that using client funds to invest in the stock market in order to achieve the 6% rate of return that at that point had been accomplished 119 times, and which was expressly allowed by the language of the

contracts negotiated with the Exchangors, could somehow be considered fraudulent or illegal. "The criminal law should not be a series of traps for the unwary." *United States v. Hussein*, 351 F.3d 9, 13 (1st Cir. 2003). To that end, the Due Process Clause demands tt criminal statutes describe each particular offense with sufficient definiteness to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss*, 347 U.S. 612, 617 (1954). "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Id.*; *see also Arthur Andersen v. United State* 544 U.S. 696, 703 (2005):

> "We have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed."

In *United States v. Yefsky*, 994 F.2d 885 (1st Cir. 1993), this Court went on to say that "finding a count of indictment charging defendant with conspiracy to commit engineering fraud by mails did not provide adequate notice and was therefore defective because it did not specify false pretenses used." "There are three related manifestations of the fair warning requirement." *United States v. Lanier*, 520 U.S. 259, 266 (1997). The two that are applicable here are the rule of lenity and the unforeseeably expansive interpretation doctrine:

> [T]he canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only

to conduct covered…due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

"Under the rule of lenity, grievous ambiguity in a penal statute is resolved in the defendant's favor." *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). The unforeseeably expansive interpretation doctrine "principally bars unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Councilman* at 84. "In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier* at 267. The Rule of Lenity and the vagueness doctrine are "devices worked out by the courts to keep the principle of legality in good repair"; *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) (stating that enforcement of overly vague criminal statutes "violates the first essential of due process of law"). Lenity's underlying principles necessarily inform the interpretation of penal statutes, and they promote consistency and fairness in the application of the criminal law.

## CONCLUSION

Petitioner respectfully requests that the Panel grant rehearing. In the alternative, this Court should consider this important, precedent-setting case *en banc.*

Respectfully submitted,

Daniel E. Carpenter
Petitioner *pro se*
Incarcerated Inmate
Reg. No. 90792-038
FMC Devens, Satellite Camp
P.O. Box 879
Ayer, MA 01432

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) or Federal Rule of Appellate Procedure 40(b).

      The petition contains <u>3,511</u> words, excluding the parts of the petition exempted by Rule.

2. This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32.

    <u>  X  </u>   The petition has been prepared in a proportionally spaced typeface using <u>MS Word 2013 </u>in a <u>14</u> point <u>Times New Roman</u> font or

    <u>    </u>   The petition has been prepared in a monospaced typeface using <u>            </u>in a <u>   </u> characters per inch<u>       </u> font.

<u>September 17, 2019</u>            Respectfully submitted,

                              Daniel E. Carpenter
                              Petitioner *pro se*
                              Incarcerated Inmate
                              Reg. No. 90792-038
                              FMC Devens, Satellite Camp
                              P.O. Box 879
                              Ayer, MA 01432

## CERTIFICATE OF FILING AND SERVICE

I, Daniel E. Carpenter, hereby certify that on September 17, 2019 the foregoing

Petition for Rehearing *En Banc* was filed with the United States Court of Appeals

for the First Circuit via express mail.

In addition, the below listed parties have been served via express mail on the same

date.

Mark J. Balthazard
Kelly Begg Lawrence
David G. Lazarus
Cynthia A. Young
US Attorney's Office
1 Courthouse Way
Ste 9200
Boston MA 02210
617-748-3100

Respectfully submitted,

Daniel E. Carpenter
Petitioner *pro se*
Incarcerated Inmate
Reg. No. 90792-038
FMC Devens, Satellite Camp
P.O. Box 879
Ayer, MA 01432

# ADDENDUM

# United States Court of Appeals
## For the First Circuit

───────────

No. 19-1246

DANIEL E. CARPENTER,

Petitioner - Appellant,

v.

UNITED STATES,

Respondent - Appellee.

───────────

Before

Torruella, Thompson and Barron,
<u>Circuit Judges</u>.

───────────

**JUDGMENT**

Entered: September 4, 2019

Petitioner Daniel Carpenter seeks a certificate of appealability in relation to the district court's denial of his 28 U.S.C. § 2255 motion. We have considered carefully the arguments sufficiently developed by Carpenter in his voluminous COA application. <u>See</u> 28 U.S.C. § 2253(c)(2) (requiring "applicant [to make] a substantial showing of the denial of a constitutional right"); <u>Peralta</u> v. <u>United States</u>, 597 F.3d 74, 84 (1st Cir. 2010) ("Having failed to request a COA as to those issues in either the district court or the court of appeals, Peralta has waived his right to appellate review of those issues."). We reject Carpenter's attempts to relitigate certain claims already resolved by this court on direct appeal. <u>See United States</u> v. <u>Michaud</u>, 901 F.2d 5, 6 (1st Cir. 1990) (per curiam) ("We note that certain other claims raised in the § 2255 motion were decided on direct appeal and may not be relitigated under a different label on collateral review.").

After careful consideration of those claims suitable for consideration, we conclude that the district court's ultimate denial of Carpenter's § 2255 claims was neither debatable nor wrong and that Carpenter "has [not] made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>see</u> <u>Slack</u> v. <u>McDaniel</u>, 529 U.S. 473, 484 (2000) (COA standard).

Accordingly, Carpenter's application for a certificate of appealability is **DENIED**. Any remaining pending motions are moot. The appeal is hereby **TERMINATED**.

By the Court:

Maria R. Hamilton, Clerk

cc:
Daniel E. Carpenter
Kelly Begg Lawrence
Cynthia A. Young
Mark J. Balthazard
David G. Lazarus